UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

Plaintiff,

vs.

**FAMILY ENTERTAINMNENT GROUP, LLC, d/b/a IN THE GAME, a foreign limited Liability company, and FEG SAWGRASS, LLC, d/b/a IN THE GAME, a foreign limited liability company,**

Defendant.
_______________________________________/

**COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendants FAMIILY ENTERTAINMENT GROUP, LLC, d/b/a IN THE GAME, a foreign limited liability company, and FEG SAWGRASS, LLC, d/b/a IN THE GAME, a foreign limited liability company, and alleges as follows:

1. This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5. Plaintiff is and at all relevant times has been a visually impaired and physically disabled person who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). As a result of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and only has very limited use of his left hand. Further, as a consequence of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and very limited vision in the other eye. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing and accurately visualizing his world and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6. Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which

will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Defendants are affiliated foreign limited liability companies authorized to do business and doing business in the State of Florida. Defendants own, operate, and/or control family entertainment venues including the venue Plaintiff intended to patronize in the near future located at The Oasis at Sawgrass Mills Mall, 2608 Sawgrass Mills Circle, Sunrise, Florida.

8. Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendants were and still are affiliated and related organizations that own, operate, and/or control family entertainment venues under the name "In The Game". Each "In The Game" entertainment venue is open to the public. As the owners,

operators, and/or controllers of these entertainment venues, Defendants are defined as places of “public accommodation" within meaning of the ADA because Defendants aare private entities which own and/or operate “a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment,” per 42 U.S.C. §12181(7)(C) and 28 C.F.R. §36.104(2).

11. Because Defendants are entertainment establishments open to the public, Defendants’ physical venues are places of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(C), and its implementing regulations, 28 C.F.R. Part 36.

12. Defendants also own, control, maintain, are linked to, and/or operate adjunct, interlinked websites, https://itgsawgrass.centeredgeonline.com and https://inthegame.net (the “Websites”). One of the functions of the Websitse is to provide the public information on the locations of Defendants’ entertainment venues. Defendants also sell to the public gift cards through the Website, which acts as a point of sale for Defendants’ services and merchandise available in, from, and through Defendants’ physical venues, and also allows the public the ability to book online parties and vents at Defendants’ physical venues.

13. The Websites also service Defendants’ physical venues by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to their customers.

14. Because the Websites allow the public the ability to secure information about the locations of Defendants’ physical venues, book parties and events online that are also available for booking in the physical venues, purchase gift cards for use in the physical venues, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical venues, the Websites have a nexus to, and are an extension of and gateway to, the goods, services, privileges, and advantages of Defendants’ physical venues, which are places of

public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by places of public accommodation as defined under the ADA, the Websites are extensions of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses. Furthermore, the Websites are necessary services and privileges of Defendants' physical venues in that, as points of sale for Defendants venues, it enables users of the Websites to make online purchases of Defendants' services and merchandise that is available from and in its physical store.

15. Because the public can purchase and book online parties and events at Defendants' physical venues that are also available for purchase and booking in the physical venues, thus having the Websites act as points of sale for Defendants' services and products that are also available in the physical venues, purchase gift cards online for use in the physical venues, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical venues, the Websites are extensions of and gateways to the physical venues, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Websites are necessary services, privileges, and advantages of Defendants' brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical venues.

16. At all times material hereto, Defendants were and still are organizations owning, operating, linking to, and/or controlling the Websites. Since the Websites are open to the public through the internet, by this nexus the Websites are intangible services, privileges, and advantages of Defendants' brick-and-mortar venues that must comply with all requirements of the ADA, must

not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-disabled public both online and in the physical venues. As such, Defendants have subjected themselves and the Websites to the requirements of the ADA.

17. Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendants' physical store located at The Oasis at Sawgrass Mills Mall, 2608 Sawgrass Mills Circle, Sunrise, Florida, and to search for the brick-and-mortar venues, check venue hours and pricing, book and reserve the venue, purchase gift cards, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use at the Websites or in Defendants' physical venues. In the alternative, Plaintiff intends to monitor the Websites in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

18. The opportunity to shop and pre-shop Defendants' goods and services, purchase gift cards online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical venues from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

19. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his visits and compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20. In the months of June and October 2022, Plaintiff attempted on a number of occasions to utilize the Websites to browse through the services and online offers to educate himself as to the services, merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar venues, check venue hours, and check venue pricing of services and merchandise with the intent to making a purchase or book a venue through the Websites or in the physical venue. Plaintiff, also attempted to access and utilize the Websites in his capacity as a tester to determine whether they were accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

21. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendants' Websites contain access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Shopping cart is mislabeled as "zero";

b. The return to home page button is mislabeled

c. The Gift Cards and Book a Party images are mislabeled as "Explore Now" with no other description

d. On the Book A Party link, at the Event Booking, the price is inaccessible

e. Pricing chart text information is inaccessible;

f. On the Gift Cards page, the shopping cart is not labeled to integrate with the screen reader;

g. . The main website, https://inthegame.net, redirects to a new web URL, https://sunrise.inthegame.net, once the location had been chosen;

h. The location map contains the address and a link to location's directions -- the address is inaccessible, and the Direction link does not state what the directions are to; and

i. Each time a web page opens the screen reader starts to relay the information on the screen and surpasses the skip to content button so it cannot be clicked on before the screen reader continues to read on.

22. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

23. The fact that Plaintiff could not communicate with or within the Websites left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the services, merchandise, sales, discounts, and promotions, as provided at the Websites and in the physical venues as the non-visually disabled public.

24. Plaintiff desires and intends, in the near future once the Websites' access barriers are removed or remedied, to patronize Defendants' Sunrise physical venue and to use the Websites, but he is presently unable to fully do so as he is unable to effectively communicate with Defendants due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Websites due to his severe visual disability and the Websites' access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

25. Because of the nexus between Defendants' physical venues and the Websites, and the fact that the Websites clearly provide support for and are connected to Defendants' venues for their operation and use, the Websites are intangible services, privileges, and advantages of

Defendants' brick-and-mortar venues that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical venues, which are places of public accommodation subject to the requirements of the ADA.

26. On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Websites by individuals with disabilities.

27. On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Websites by individuals with disabilities.

28. On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Websites by individuals with disabilities.

29. On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

30. On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

31. On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

32. On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

33. Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

34. Defendants have not created and instituted on the Websites pages for individuals with disabilities, nor displayed links or information hotlines, nor created information portals explaining when and how Defendants will have the Websites, applications, and digital assets accessible to the visually disabled or blind community.

35. The Websites do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

36. Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Websites to visually disabled individuals who want the safety and privacy of purchasing Defendants' services and/or merchandise offered on the Website and in the physical venues from their homes.

37. Defendants thus have not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Websites and the physical venues in contravention of the ADA.

38. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet ecommerce and shopping websites, such as the Websites at issue in the instant action.

40. Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Websites that prevent individuals with visual disabilities from the means to comprehend information presented therein.

41. Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Websites.

42. The barriers that exist on the Websites result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Websites' access and operation.

44. Notice to Defendants is not required because of Defendants' failure to cure the violations.

45. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

47. Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

48. Pursuant to 42 U.S.C. §12181(7)(C), Defendants are public accommodations under the ADA and thus are subject to the ADA.

49. Pursuant to 42 U.S.C. §12181(7)(C), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendants' physical venues, book and reserve online parties and events at the physical venues that can also be booked and reserved in the physical venues, purchase gift cards for use both online and in the physical venues, and sign up for an emailer to receive exclusive online offers, benefits, invitations,

and discounts for use both online and in the physical venues. The Websites thus are extensions of, gateways to, and intangible services, privileges, and advantages of Defendants' physical venues. Further, the Websites also serve to augment Defendants' physical venues by providing the public information about the venues and by educating the public as to Defendants' available services and merchandise sold through the Websites and in the physical venues.

50. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

51. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

52. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

53. The Websites must comply with the ADA but do not as specifically alleged hereinabove and below.

54. Because of the inaccessibility of the Websites, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendants have made available to the public on their Websites and in the physical venues in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

55. The Websites were subsequently visited by Plaintiff's expert in July and October 2022 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as additional access barriers, existed. Defendants thus have made insufficient material changes or improvements to the Websites to enable their full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Websites to visually disabled individuals, nor have they posted on the Websites effective "accessibility" notices, statements, or policies to provide blind and visually disabled persons such as Plaintiff with a viable alternative means to access and navigate the Websites. Defendants thus have failed to make reasonable modifications in their policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of viable and effective "accessibility" notices, policies, or statements and the numerous access barriers as alleged herein and as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Websites not fully accessible to users who are blind and visually disabled, including Plaintiff.

56. More violations may be present on other pages of the Websites, which can and will be determined and proven through the discovery process in this case.

57. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

58. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

59. Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Websites by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Websites are ongoing.

60. The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

61. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

62. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

63. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64. As alleged hereinabove, the Websites have not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

65. As a direct and proximate result of Defendants' failure to provide ADA compliant Websites, with nexuses to the brick-and-mortar venues, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with the Website and the physical venues.

66. Because of the inadequate development and administration of the Websites, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

67. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendants to adopt and implement web accessibility policies to make publicly available and directly link from the homepage of the Websites to a functional statement as to the

Defendants' policies to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Websites and the physical venues.

b) Require Defendants to take the necessary steps to make the Websites readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Websites being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Websites until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical venues and becoming informed of and purchasing Defendants' services and merchandise, and during that time period prior to the Websites being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Websites and the physical venues.

68. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that the Websites are in violation of the ADA;

B. An Order requiring Defendants, by a date certain, to update the Websites, and continue to monitor and update the Websites on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Websites and effectively communicate with the Websites to the full extent required by Title III of the ADA;

C. An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Websites, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Websites;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to its Websites;

F. An Order directing Defendants, by a date certain, to establish policies of web accessibility and accessibility features for the Websites to ensure effective communication for individuals who are visually disabled;

---

[1]  or similar.

G. An Order requiring, by a date certain, that any third-party vendors who participate on the Websites be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Websites on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Websites to identify any instances where the Websites are no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policies to ensure the persons with disabilities have full and equal enjoyment of the Websites and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: October 28th , 2022.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By: *s/ Roderick V. Hannah*
RODERICK V. HANNAH
Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By: *s/ Pelayo M. Duran*
PELAYO M. DURAN
Fla. Bar